Thank you, we're going to proceed now with Appeal 24-2244, U.S. v. De'Andre Owens. Ms. Christensen, we'll begin with you. Thank you, Your Honor. May it please the Court, Counsel. Good morning. My name is Joanna Christensen and I represent the appellate, De'Andre Owens, in this case. The handling of the dual testimony case in this case is reversible error, plain or otherwise. Detective Dukes and Agent Parker testified as both lay and expert witnesses, and no attempt was made to follow the precedent in this Court's United States v. Jett. With respect to the jury instruction on that issue, Ms. Christensen, neither side asked for that instruction, and I think we've been pretty clear that courts don't have to sui sponte, bring up instructions if not asked for it. So how could that be plain error that that instruction was not given? I understand you have an argument about the procedure itself, but you've also argued the jury instruction that came out of Jett, and I don't know how that could be plain error or even error given our case law. I think that you're right, there are many levels of error in this case, and while I would hate to rank them, there are some that are less important but add to the final error in this case, which makes it plain. And the jury instruction, of course, was not asked for, but Jett has other procedures that should be followed. And when that becomes clear to the district court judge as part of the judge's gatekeeping of expert testimony and testimony in general, that should have been enough to at least prompt the court to both, as the government, to structure... But what law supports that? And again, we're on plain error. We've said, I think we recently said it en banc in Page, that courts don't sui sponte, have to raise jury instructions if neither side asks for them. Right, and I think that in Jett, there was the conversation about the formal jury instruction, but it's also discussing with the jury at the moment when the dual testimony is taking place. Right, the procedure during the testimony. Right, right. And I think you agree nobody asked for a particular Jett procedure here either. Right, nobody asked. Why would, as a strategy matter, why in the world would the defendant want to do that in this case? Why? I mean, these agents are unquestionably qualified to testify to the simple matters on which they're testifying. Why in the world, as a strategic matter, would defense counsel want the judge to interrupt the testimony and explain to the jury that the witness who is about to give percipient testimony is an expert? I think that the error comes in Agent Parker's testimony because he testified particularly about the recording device only as an expert. He had no familiarity with the actual recording device used. And that bolstered both his testimony then later, but also Anderson, the CI's testimony, and then Duke's testimony as well. So he came in and talked about that this is the way it works. You can't tamper with it. That went straight to the defense's argument at trial, that there had been some sort of tampering that Anderson— But the judge isn't going to tell the jury that the witness is not credible or to disbelieve him. The judge, if anything, is just going to help the government. I mean, as a strategic matter, I can't imagine a defense attorney who would want to say, now, judge, after he's given this expert testimony, tell the jury that he's an expert. Just go ahead and tell them that. What sense does that make? I think framed that way, yes, Your Honor. It seems like—and not framed in the way when you tell the jury that there's a difference between testimony from the witness that they actually observed something, so that he actually observed the recording device. But that came out on cross-examination. Like, that's the whole function of cross-examination. Agent Parker, you weren't—you didn't participate in the control by. Right. You don't know whether—how the system was working on that day. Right. It's great cross-examination. Sure, but we also have the judge not instructing the jury, and the jury perhaps not knowing exactly what to do with these documents. So we're back to the instruction again. That wasn't asked for. And consistent with JET, the agent gave the testimony first—that was the opinion testimony—and then went on to factual testimony, and that's what in JET we directed that you do. So even though you've claimed there's a JET error, in terms of structure, that's how Agent Parker testified. I think you— So we're back to the instruction, which— Well, we also have to look at the way the witnesses were presented. We have Dukes, then Anderson, for quite a long time, who was a not-very-credible witness and had problems both with defense counsel and with the court, and then you have Parker. So it's not just that Parker's was structured. But JET doesn't address that. JET doesn't say that you have to put on dual experts in any particular sequence. It just says, when you put on a witness who is a dual witness with expert and fact testimony, that you should follow these procedures and make it clear what's opinion testimony and what's factual testimony. Right, and that's why this case is a step beyond JET, because JET didn't have that issue. JET went back and forth— But how could it be plain error, then, if it was not something we said you have to do in JET? It's plain error based on the handling of the expert in lay testimony with various witnesses, also with the lack of instruction, both procedurally and the jury instructions themselves. So specifically, given that for both of the witnesses who were dual witnesses, they gave their expert opinions first and then went on to the factual. They didn't mix back and forth expert fact, which is what we said in JET you shouldn't do. So they followed that procedure. The judge did not respond to given instruction, which we've said courts don't have to do. What is the exact violation of JET that you—the plain error, given that, that you think exists? The plain error, I think we see more back and forth with Dukes, because Detective Dukes actually dealt with a recording device. So he testifies about the recording device as an expert. Then he talks about how it was working during Anderson's interaction with Mr. Owens. And then that goes on for quite some time, because that was the primary defense argument for the jury. And again, then you have Anderson in the middle with the credibility and then coming back with Agent Parker bolstering the credibility about that recording device. That was really unnecessary testimony, because he was there solely to give testimony. And that's where you see defense counsel objecting to the type of testimony he's giving, unsure about what he's going to say as an expert or not. And then again, then he moves on to his fact portion, the handling of methamphetamine. And then you have him on the second portion of the trial about the 851 notice and then the committing the offense while on pretrial release. So that does talk about the aura of reliability that this dual testimony will give to the witness themselves, but also to other witnesses. And that's the plain error here, is that that was allowed to continue. So and in the government's brief, they cite the Supreme Court Frady case about plain error and that, you know, to the extent that the court and the government were derelict and not noticing. I think that yes, it would have been a better case here, absolutely, if defense counsel had made the objection, asked for the instructions. But at some point when JET has been law and dual testimony has been decided by this court, it does come fall upon the court and the government to follow the appropriate procedure. Can I ask you a question about Officer Herzing who was incorrectly included as giving opinion testimony in the jury instructions? What is the prejudice to your client from that? That again is one of my lower errors. It was an error. It shows that there was error in here and probably confusing to the jury. But for plain error review on prongs three and four, the only argument I saw in your brief was that his testimony went to the heart of the defense about the recording being turned off. But Herzing testified about count two, the witness tampering, not the recording piece and the buys. So I wasn't sure what the prejudice, how you meet, what your argument is to prongs three and four. My argument for prongs three and four, Herzing, if I did say Herzing went to the heart of the defense, that must have been an error in my brief talking about the wrong law enforcement officer because he was the second. Correct. So, you know, I think it's that confusion to the jury. But if we're talking about the second or third and fourth prongs of plain error, you know, the fairness to the fair trial to Mr. Owens, of course, when the jury hears all of these things and they're not really they're not explained to the court or to the jury about how they're supposed to. And what would the prejudice be? Because the instruction says he was given. He's giving opinions. It doesn't label him an expert. We have consciously gotten that out of prior versions of instructions. It just says he's giving opinions. So how could that be prejudicial in this case as to Herzing? Oh, as to Herzing, it was simply that he did not give opinions in the way that Dukes and Parker also gave opinions. Herzing gave some, if I'm remembering correctly, some interpretation about what the conversations were about the witness tampering. But those in this court has held many times that that kind of interpretation about either text or voice calls is appropriate for law enforcement to make based on their experience in that case. So the simple fact is the confusion. That's where any prejudice would come is the confusion by including Officer Herzing in that instruction. So to reserve the remainder of your time? Yes, thank you. Thank you, Ms. Christensen. Ms. Hudson will now move to you for oral argument on behalf of the appellee. May it please the court.  Defendant has raised two, appellant has raised two issues, two street issues on appeal. The first has to do with the lack of contemporaneous objection as to trial court errors. The second has to do with sentencing perceived error that was withdrawn at the district court and is waived and not subject to review. I will spend my time discussing the trial court errors and first apologize for the error. It was my fault. I did not follow JET. I should have and would like to move forward from that and simply say that prongs three and four, given the evidence adduced at trial, simply cannot be met. There is no evidence that should show the court the defendant's substantial rights were affected and that there's a reasonable probability but for my error that the outcome of the proceeding would have been different. I would turn the court's attention to the testimony of Lieutenant James. There was no objection to his testimony at the trial court level. There's no issue raised before the Court of Appeals regarding this testimony. And he very clearly explains that the witness, Mr. Anderson, was unable to manipulate the recording device, that it was turned off by either Officer Dukes or Officer Castleman. And defense counsel was given an opportunity to cross-examine this witness as well. There was an issue regarding the video recording being turned off prematurely, but I believe that may have been an error on the part of defense counsel in downloading the video. But she did, in great extensive cross-examination, did examine all the witnesses about where the witness was, where the recording source was, and did attempt to make an argument that perhaps during this moment or that moment, a second lie occurred. But there was no real evidence that would cause this court to find that the jury would have returned a different verdict had the JET procedures been employed here. Finally, with regard to the fourth prong, a serious effect on the fairness, integrity, and public reputation of the judicial proceedings, I respectfully submit to the court that the fact that the defendant reached out to the confidential source and offered a $10,000 bribe rendered the evidence against him overwhelming. This is an individual who not only was in the videotape, was following the confidential source, called the confidential source, with records recording that presented to the jury. This is an individual who reached out and tried to bribe him. The jury was able to hear that, and should the court return the case for a new trial, the jury would hear it again. It is direct evidence of his consciousness of guilt, and therefore we respectfully suggest that it is overwhelming. Appellant has also indicated that she believes that Special Agent Parker's testimony regarding the 851 enhancement and the fact that the individual was on supervised release at the time of the offense, the aura extended to that information as well. However, I would point the court's attention to the record, Document 110 and 148, I believe. The district court made a finding in advance of trial that these documents were admissible, therefore his aura would be decreased as it relates to these independently admissible documents. As it relates to the sentencing, I believe that the evidence is sufficient to show the court that this is a waived right, and unless there are further questions, I would ask the court to affirm the judgment and the sentence. Excuse me, one quick question. Yes, Your Honor. On the sentencing issue and the Ruth issue, both, I think it's Justice Barrett and Justice Sotomayor, have urged the Sentencing Commission to take this issue up given the circuit split. Do you have any idea where that is? I know they attempted a year or two ago, and it wasn't in the final amendments. Do you know if they're still working on that? Your Honor, I apologize. I do not know the answer to that. That's okay. I would be happy to give supplementary briefing, should the court— No, that's okay. It was more out of curiosity, given that this issue repeatedly comes up. Yes, Your Honor. Thank you. Thank you very much. Thank you, Ms. Hudson. Ms. Christensen will now move back to you for rebuttal argument. I'll start briefly with the Ruth issue. I don't have any more knowledge about the Sentencing Commission either. My understanding is that they have been working on it. But I think it is a difficult issue to resolve by the Sentencing Commission. But at this point, we're preserving it for the review. We've not been successful. I've been preserving it since Ruth. Everybody tries to get Ruth overruled. I am ever hopeful about many things, not just Ruth. But I will talk a little bit about the overwhelming evidence. The overwhelming evidence about the witness tampering— I can certainly concede that from the government's point of view, and we're not contesting that. But what this goes to directly is the drug offense evidence and the defense theory that this was something that was orchestrated by Anderson, that he obtained it somewhere else. So the third and fourth prong of plain error are always difficult. But in this case, I believe they are met because of the lack of fair trial on that drug offense issue and that the way the evidence was handled affects the fairness and integrity of jury trials in general when this continues to happen. So unless the court has further questions. No, thank you, Ms. Christensen. Thank you, Ms. Hudson.